## DENNY *et al v.* COMMERCIAL CREDIT COMPANY.

1. A person interested in the subject-matter of a suit in a trial court which renders a judgment favorable to his interest, is not a necessary party defendant in error in a bill of exceptions addressed to the Supreme Court, assigning error upon the judgment of the trial court, where such person so interested was not a party to the suit in the trial court.

2. The petition was sufficient to withstand a general demurrer, and it was erroneous to dismiss the plaintiff's case on the ground that the petition failed to allege a cause of action.

No. 3741.    FEBRUARY 27, 1924.

Equitable petition; intervention. Before Judge Franklin. Richmond superior court. March 23, 1923.

On January 25, 1921, Sam Denny brought his petition to the superior court of Richmond county, against the Jefferson Insurance Company, a foreign corporation, for recovery of an amount alleged to be due on account of a sustained loss covered by a policy of fire insurance issued by that company. On March 5, 1921, an equitable amendment to the petition was filed, seeking the appointment of a receiver of the Jefferson Insurance Company, and subjection to payment of his demand certain United States bonds held on deposit by the State treasurer pursuant to the statutes of this State. A receiver was duly appointed, who made demand upon the treasurer. On March 16, 1921, the treasurer, in response to an order of the court, filed an answer alleging: (a) That he holds a a deposit of the Jefferson Insurance Company, consisting of a described United States bond. (b) That he is informed that the Jefferson Insurance Company is no longer transacting business, and that the same is insolvent and has been placed in the hands of a receiver by a court outside of the State of Georgia. (c) That the deposit is for the protection of all outstanding policyholders of the Jefferson Insurance Company in this State; and under the provisions of the Civil Code, § 2420, it is the duty of the State treasurer upon notice of any loss against an insurance company, together with the amount claimed, to retain, subject to the order of the court trying any suit that may be brought for recovery of such sum, a sufficient amount to pay the judgment. (d) That he has received notice of specified claims of named persons. (e) That the claims above mentioned are all proved against three insurance companies, namely, the North Atlantic Insurance Company, the Liberty Marine Insurance Company; and the Jefferson Insurance Company, each of which has failed; and it is impossible from the claims presented to say what the relation of these companies to each other was, or the amount chargeable respectively to each of them. It was prayed that the court, regarding the treasurer as a stakeholder without interest, require the disbursement of the money under proper order in such manner as to protect and preserve all rights of the treasurer. After

the filing of this answer the plaintiff, on March 16, 1921, filed another amendment to his petition, alleging: (a) That the treasurer holds a deposit under the provisions of the Civil Code, § 2419, for the benefit of creditors of foreign insurance companies in this State. (b) That under the Civil Code, §§ 2420 et seq., any creditor who has secured a judgment can enforce full payment out of the bond deposit, and the treasurer has no other alternative than to pay such judgment. (c) That unless equity interposes, judgments first obtained will exhaust the fund on deposit, to the exclusion of other creditors. (d) That the three insurance companies named in the answer filed by the State treasurer have been doing business in this State and issuing policies jointly through a general agency called the "Northern Underwriting Agency," another foreign corporation, and that the liabilities of the three companies are joint. The prayers were: (1) For the appointment of a receiver to take charge of the deposits of the three named insurance companies now in possession of the State treasurer and hold the same subject to the order of the court. (2) For the appointment of an auditor. On March 17, 1921, a petition for intervention was filed by the Commercial Credit Company of Baltimore and the Continental Investment Company of New Orleans, for themselves and for the use of other named persons and others similarly situated as creditors and holders of insurance policies issued by the three insurance companies named in the answer filed by the treasurer of the State. The petition for intervention was signed: "Sam'l H. Myers, C. Henry & R. S. Cohen, Attorneys for petitioners." The petition adopted the allegations of the ancillary petition for receiver theretofore filed by Sam Denny, alleged various claims of the petitioners and their right to participate in the distribution of the funds held by the State treasurer on deposit, and sought the appointment of an auditor to investigate the merits of the claims of all parties and make such finding as the facts would warrant, including disbursement of the funds so held on deposit. The intervention was allowed by order of the court, and the intervenors were made parties in the cause.

On April 9, 1921, a petition addressed to the superior court was filed the caption of which was: "Denny et al. v. Jefferson Insurance Company et al. Equitable bill for receiver, etc." The petition alleged that "Plaintiffs herein bring this petition in aid of and ancillary to the original bill herein, and respectfully show:" (1) The above case

was filed to the March term, 1921, of this court, and by order dated March 5, 1921, a receiver was appointed to take over the bond deposit of the defendants with the State treasurer. (2) On March 12, 1921, a similar bill was brought against the defendants in the superior court of Fulton County by Horace Peacock, and a receiver was appointed for the same bond deposit. A dispute arose as to which court had prior jurisdiction, and to avoid litigation the parties agreed to consolidate the two cases upon terms that a receiver should be petitioned for in Fulton superior court and an auditor in Richmond superior court, both of such officers being indispensable in the case. (3) On March 29, 1921, H. A. Woodward, Esq., of Richmond County, was appointed auditor. (4) Hewitt W. Chambers, of Fulton county, having been appointed receiver on March 12, 1921, the State treasurer declined to deliver the bonds to him unless so directed and authorized by this court. (5) The defendants are hopelessly insolvent and have been dissolved by courts wherein they are chartered, and are now in process of liquidation. (6) There are claims exceeding $100,000, in suits against the defendants in this county, and none of the suits are being defended or resisted in any manner. (7) A great many of the claims are unfounded, and the just claimants will suffer irreparable loss unless such claims are defended. The prayers were: (a) That the court pass an order authorizing the receiver appointed by the superior court of Fulton County to receive the bond deposit from the treasurer, and that the treasurer be directed to deliver the deposit to such receiver. (2) That one of the attorneys signing the petition be authorized and directed, for the benefit of all just claimants, to defend against the alleged unjust claims. An order was granted, April 9, 1921, upon the petition, authorizing Hewitt W. Chambers, as receiver of the court in the consolidated cases, to take over the bond deposit for the benefit of all just claimants, and directing the State treasurer to deliver the same to the receiver. The order also provided for the appointment of one of the attorneys to appear before the auditor and defend all interventions interposed, to the end that no unjust claim be allowed. The auditor made his report on August 15, 1921. On May 15, 1922, Sam Denny filed in the superior court a petition which contained the caption: "Sam Denny et al. v. Jefferson Insurance Company et al. in the superior court of said county, January term, 1921. Petition for a receiver and auditor,

etc." The paper alleged: "Now comes Sam Denny, plaintiff in the above-entitled cause, and brings this his ancillary petition in and to the above case, and respectfully shows unto the court." (1) That H. A. Woodward, Esq., the auditor appointed by this court, did make his final report, August 21st, 1921, the said report having been made to the superior court of Fulton County pursuant to the terms of an agreement between counsel to consolidate the above case with a similar case pending in Fulton superior court. (2) Petitioner's claim under policy number 1910 was allowed by the auditor for a stated sum, a copy of the policy being now in possession of the Commercial Credit Company. (3) The Commercial Credit Company is named in the policy as one of the payees with your petitioner, according as the respective rights and interests of each party may appear. (4) The Commercial Credit Company, a corporation of the State of Louisiana, has intervened and is now a party to this case, claiming to take over practically all of the fund. (5) Under the terms of the policy the Commercial Credit Company is a just claimant against the general assets of the three insurance companies now in process of liquidation in the City of New York, and has filed its claims against the general assets of those corporations. (6) The Commercial Credit Company has no just rights to the funds herein in controversy, the same having been deposited in this State pursuant to the statutes of this State for the protection of Georgia policyholders. (7) The Continental Investment Company, a corporation of Louisiana, is likewise named as one of the payees in the policy, but has abandoned all claim, recognizing that it has no just claim. (8) Hewitt W. Chambers as receiver has issued checks disbursing the fund, the checks being made payable to the parties as their respective interests may appear; the Commercial Credit Company has no just interest in the checks, but claims practically all of the fund, and refuses to indorse the checks to the rightful owners. (9) The Commercial Credit Company is seeking to set up a pretended claim growing out of a contract between it and petitioner, dated October 24, 1919, which contract has no relation to the insurance contract and the fund here in controversy, but it involved different parties and was never submitted to the auditor for consideration, nor has it become a part of the record in this case; a copy of the contract is in possession of the Commercial Credit Company. (10) Under the terms of that contract the Commercial Credit Com-

pany has no just claim against petitioner, in that the property there-in referred to and out of which the purported claim arises was destroyed by fire; and the title to the property being in the Commercial Credit Company, the loss under the law falls upon the Commercial Credit Company. (11) There are various other intervenors whose rights and interests are involved in the same way as those of petitioner, and who should be permitted and notified to intervene and establish their rights; the attorney for the Commercial Credit Company is now in possession of the checks and funds, and claims practically all of the funds for his client; some of the intervenors may be induced to accept only a portion of their claims, but this should not prevent them from intervening and establishing their rights. (12) "That the issue herein made was never raised before the auditor at any time, he having held that the same was not properly an issue for his report; that unless the issues herein raised are properly determined by a jury, and the rights and interests of all parties adjudicated, intervenors will suffer great loss." The prayers were (a) That the court inquire into the matter and adjudicate the rights of the respective parties. (b) That all intervenors or claimants be allowed to intervene. (c) That all claimants be notified to intervene herein, to the end that full and complete justice may be had. Subsequently the Automotive Supply Company Inc., J. R. Powers, and G. E. Youmans as creditors, filed interventions adopting the allegations of the foregoing petition, each alleging that the auditor had allowed their respective claims for specified amounts.

On January 17, 1922 [1923?], Sam Denny, J. R. Powers, G. E. Youmans, and the Automotive Supply Company Inc. filed an amendment alleging as follows: (1) From the $30,000 deposited in this State, approximately $9500 was paid out to the officers of the court, attorneys, and other expenses incident to disbursing the fund, and only about $8500 has been properly applied to the claims of policyholders in this State, which amount in the aggregate to approximately $65,000. The remaining amount, $11,686.51, has been impounded by garnishment proceedings issued in this case and served upon the attorneys of record for the Commercial Credit Company. (2) "That counsel for the said Commercial Credit Company got possession of the said $11,686.51, by reason of the fact that the checks issued by the receiver herein were made payable jointly to the attorneys for both parties, without regard as to

whether the said Commercial Credit Company had any interest therein or not; that the auditor in said case failed to investigate or make any report as to the interests of each respective party, or as to the law governing the rights ·of each respective party named as payee in said checks, with reference to the said fund, and which has resulted in great confusion and brought about the present litigation; that the attorneys for the Commercial Credit Company, having obtained possession of the said checks, would not deliver the same over to intervenors, unless they would consent to their terms of settlement; that there are now in the possession of counsel for the said Commercial Credit Company checks which amount to $3,748.57" (3) "That counsel for said Commercial Credit Company having obtained possession of said checks, a number of intervenors herein have been induced and pursuaded into signing and indorsing the said checks, and in this way they have obtained the sum of $7,938.94, and which has been impounded in this court by the aforesaid garnishment proceedings." (4) "That the contract of insurance issued in each instance herein was by and through a corporation of New York City, known as the Northern Underwriting Agency; that said corporation acted as the only and sole agents for the said three insurance companies, all of the policies herein having been issued by it from the City of New York; that the said Northern Underwriting Agency only issued automobile insurance, and said Commercial Credit Company's only business was and is dealing in automobiles; that their scheme and plan of doing business in Georgia was in this wise: When an automobile dealer in this State procured a purchaser for an automobile, and the purchaser did not have the funds with which to buy the same, the said Commercial Credit Company had an arrangement with such dealer in automobiles, whereby it would come in and buy the automobile from the dealer, and upon a substantial part payment made thereon the said Commercial Credit Company would take a bill of sale on the automobile and then deliver the same over to the would-be purchaser, the remaining purchase-price being payable in installments." (5) "That the said Commercial Credit Company, acting in conjunction with the said Northern Underwriting Agency, would thereupon insure all such automobiles with and through the said Northern Underwriting Agency, charging high and excessive rates of insurance, which was collected from the purchaser in this State." (6) "That

the said Commercial Credit Company obtained the said insurance without conferring with or giving intervenors any oopportunity of investigating the financial responsibility of the said insurance company, nor were they allowed or permitted to exercise any choice in the placing of said insurance, or the premiums paid therefor; that the said Commercial Credit Company and the said Northern Underwriting Agency dealth only with, through, and in conjunction with each other in financing and insuring automobiles; and your intervenors have information and belief, and upon such information and belief do charge, that the said Commercial Credit Company and the said Northern Underwriting Agency were affiliated with each other, and the said Commercial Credit Company shared in all the premiums paid in upon the policies issued as aforesaid; that in case of a loss or claim arising under any of the policies, the said Commercial Credit Company would in such case collect any balance due them upon the purchase-price of the automobile, irrespective and without regard as to whether the purchaser's claim was paid or not, and without regard as to whether the loss as reported was just or unjust." (7) "That where the interests of the Commercial Credit Company were concerned under a policy, there was but very little, if any, investigation or inquiry made to ascertain whether a loss or claim was fair or fraudulent; that this unjust and unfair alliance and manner of doing business resulted in a great number of claims and losses being paid that were unjust, and in many cases totally unfounded, and which is clearly borne out by the auditor's report, wherein it appears that only about one half of the losses reported herein were allowed by the auditor." (8) "That it was due to this unjust and unfair coalition of the said Commercial Credit Company with the said Northern Underwriting Agency that brought about the failure of the said insurance companies, resulting in great losses to the policyholders of this State." (9) "That as further evidence and proof of the fact that the said Commercial Credit Company and the said Northern Underwriting Agency worked in conjunction and were affiliated with each other, intervenors show that on the 23rd day of October, 1920, Sam Denny, one of your intervenors herein, sustained the loss of his automobile and out of which his within claim arose; that on said date the said Commercial Credit Company had an interest and equity in said automobile, amounting to $365; that due notice and proof of loss was furnished, and the

claim of the said Commercial Credit Company, amounting to $635 [$365?] was duly paid, whereas the claim of the said Denny amounting to $2131.50, representing his interest and equity in the same automobile, was never paid, and that within a few weeks thereafter the said insurance companies failed." (10) "That as further evidence of the fact that the said Commercial Credit Company and the said Northern Underwriting Agency were affiliated, intervenors show that the said Commercial Credit Company had knowledge of and knew of the insolvent conditions of the said insurance companies before they failed; that acting upon such knowledge the said Commercial Credit Company replaced and reinsured in other companies the automobiles in which they had an equity or interest, previous to the failure of said insurance companies." (11) "That neither of your intervenors are indebted to or in anywise connected with the said Commercial Credit Company; that as citizens of Georgia they are entitled to have their claims, as allowed by the auditor in this case, paid in full out of the aforesaid sum of $11,686.51; that the amount of the claims of your intervenors as allowed by the auditor herein, after all proper deductions have been allowed, are as follows: Sam Denny, $3131.50 [$2,131.50?]; J. R. Powers, $756.25; Automotive Supply Company, $510.30." The prayers were (a) "That this Honorable Court do pass an order requiring the said Commercial Credit Company and the said garnishees in this case to turn over to the Clerk of Court the aforesaid sum of $11,686.51, and that the same be held by him subject to the further orders of this Court." (b) "That the parties named, as payees in each of said checks being now parties to this case, that they be required by proper order of this Court to endorse to the Clerk of this Court or to a receiver, if the court should deem it best to appoint one, all of the said uncashed and unpaid checks now in the possession of the said Commercial Credit Company." (c) "That if it should appear upon the trial of this case that the said funds have been turned over to the said Commercial Credit Company and is without the jurisdiction of this Court, or should the said Commercial Credit Company fail to comply with the orders and decrees of this Court with reference to refunding the said funds into this Court; that your intervenors do have and recover joint and several judgments against the said Commercial Credit Company and the said garnishees in this case for the full amount of the claims of

your intervenors herein." (d) "That such other and further relief be had herein as to this Honorable Court may seem just, proper and equitable, to the end that justice of equity may prevail."

On January 17, 1923, as appears from the judgment of the court and recitals in the bill of exceptions, the judge allowed a second amendment to the petition filed by Sam Denny, May 15, 1922. The amendment purported to strike paragraph one of the petition, and to allege the following in lieu thereof: (1) "That the auditor appointed in this case, by order passed herein on March 5th, 1921, has prepared and compiled his report herein pursuant to his appointment; that the receiver appointed by this Court, to wit, Hewitt W. Chambers, of Fulton County, Georgia, was also named as receiver in a purported case sounding Horace Peacock vs. North Atlantic Ins. Co., in which purported case the plaintiff sought to have a receiver appointed to take over the same fund for which a receiver had already been named in this case; that no service of any kind was ever had in the said purported case of Horace Peacock vs. North Atlantic Ins. Co. upon the defendants therein named, nor did the defendants or any one for them ever acknowledge service; the only agent of the defendants named in said case being resident in Richmond County, Georgia." (2) "That the said receiver being in Fulton County, where the fund herein was being held by him as receiver, the said auditor herein, assuming possibly that there was a case pending in Fulton County, as aforesaid, filed his report in the superior court of Fulton County, contrary to law and the terms of his appointment by this court." (3) "That the said original report of the said auditor in this case is herewith presented to this court by the plaintiffs herein, as a part of the records in this case; and they pray that the same be by this court approved and allowed and ordered filed as a part of the record in this case." (4) "That no service whatever having been made in the aforesaid case of Horace Peacock vs. North Atlantic Ins. Co., pending in Fulton County, any and all orders attempting to appoint a receiver, and all other orders passed, if any, in said case, are unfounded, illegal, null and void, and, in so far as they relate to or affect this case, should be so declared by this court; a certified copy of the original petition in said case being hereto attached and made a part hereof." The prayer was: "That the said report of the auditor tendered herewith be approved, allowed, and ordered filed herein; and that

such other judgments and orders be passed herein, pursuant to and with reference to the said report, as will protect the interests of plaintiffs." A copy of the record in the case in the Fulton superior court was attached. The petition filed by Sam Denny on May 15, 1922, was sworn to by Sam Denny, as were also each of the amendments thereto; no process was attached, and there was no service or acknowledgment of service by the Commercial Credit Company as to any of the papers; but on December 14, 1922, the Commercial Credit Company filed an answer which alleged that the plaintiff was concluded by the auditor's report which was not excepted to.

When the case was called for a hearing the Commercial Credit Company filed a demurrer as follows: "Now comes the Commercial Credit Company, and without admitting any jurisdiction of the superior court of Richmond County, Georgia, and by its appearance not waiving jurisdiction, and appearing herein solely for the purpose of submitting this motion, and moves the court to dismiss the plaintiff's petition: 1. Because the petition shows on its face that if any court has jurisdiction it is the superior court of Fulton County, Georgia. 2. Because this court is without jurisdiction to entertain a petition, called ancillary to a suit between the same parties, involving the same subject-matter, pending in the superior court of Fulton County, Georgia, where there is in said petition no prayer for discovery and relief, nor for discovery alone. 3. Because said petition does not set forth a cause of action, legal or equitable. 4. Because it does not appear that the matters set out in said petition were not or are not pleaded or asked in the suit in Fulton County, Georgia, to which this petition alleges that it is ancillary. 5. Because no relief is prayed which the court can administer. 6. Because it does not appear that the matters set out in said petition alleged might not have been alleged in the original suit between the same parties and on the same subject-matter. 7. Because said petition does not pray for process, nor is any process attached thereto. 8. Because said petition does not by name or description set forth any defendant therein. 9. Because it is not shown that any person complained against is within the jurisdiction of this Court." Upon this demurrer the court rendered the following judgment: "The above-stated case having been called for trial on the afternoon

of January 15th, 1923, in Richmond superior court, on the call of the case the defendants filed a written motion to dismiss the plaintiffs' petition on the grounds set forth therein. After argument was had to the hour of adjournment by counsel for the defendants, court adjourned to meet the following morning, at which time counsel for plaintiffs offered an amendment, attaching thereto a certified copy of a suit filed in Fulton superior court by the parties to this petition, and made said certified copy a part of the amendment. When said amendment was offered counsel for the defendants made oral objection to the allowance of said amendment, on the ground that the certified copy of the petition in the suit in Fulton superior court was not a complete record of the case, and urged that the amendment be not allowed. After argument, the court remarked and ruled that he would allow the amendment, but after the allowance of said amendment would sustain the original motion of the defendants to dismiss. The following day, on the 17th day of January, 1923, defendants' counsel sent down an order to be signed by the court in accordance with what happened, which the court signed. After plaintiffs' counsel saw the signed order, he contended that the signed order was not in accordance with what happened; thereupon the court vacated said order, and fixed the 23rd day of March on which the lawyers for both sides were to meet and agree, if they could, on an order. It is ordered, considered, and adjudged that the original motion of defendant's counsel to dismiss plaintiffs' petition as amended, because the same failed to set forth a cause of action, be and the same is hereby sustained." Error was assigned upon this judgment.

*Paul T. Chance* and *McClelland & McClelland,* for plaintiffs.

*William M. Howard,* for defendant.

ATKINSON, J. 1. A motion was made in the Supreme Court to dismiss the bill of exceptions, on the grounds: (1) That it appears from the record that C. H. & R. S. Cohen, a law partnership composed of C. Henry Cohen and R. S. Cohen, were parties defendant in the litigation, and directly interested in having the judgment of the trial court sustained; that they are not parties defendant to the bill of exceptions, that they had not been served with a copy of the bill of exceptions and had not acknowledged service or waived service of the bill of exceptions. (2) That said partnership was a necessary

and indispensable party to the bill of exceptions. (3) Because it appears from the record that Samuel H. Myers was a party defendant to the litigation in the court below and is directly interested in having the judgment of the trial court sustained, and, though a necessary and indispensable party to the bill of exceptions, he has not been served with a copy of the bill of exceptions and has not acknowledged or waived service. It appears from an inspection of a petition filed by the Commercial Credit Company, as specified in the bill of exceptions and included in the transcript of the record sent to this court, that the attorneys of record for the Commercial Credit Company were "Samuel H. Myers, C. Henry & R. S. Cohen." It was alleged in a subsequent petition that was filed by Sam Denny, J. R. Powers, G. E. Youmans, and the Automotive Supply Company, January 17th, 1923, "that of and from the said $30,000 deposited in this State as aforesaid, approximately $9,500 was paid out to the officers of the court, attorneys, and other expenses incident to disbursing the said fund; that only about $8,500 has been properly applied to the payment of the claims of policyholders in this State, and which claims in the aggregate amount to approximately $65,000; that the remaining amount of said fund, to wit: $11,686.51, has been impounded by garnishment proceedings issued in this case and served upon the attorneys of record for the Commercial Credit Company;" and "that counsel for said Commercial Credit Company having obtained possession of said checks, a number of intervenors herein have been induced and pursuaded into signing and indorsing the said checks, and in this way they have obtained the sum of $7,938.94, and which has been impounded in this court by the aforesaid garnishment proceedings." And in the same petition it was prayed: "That this honorable court do pass an order requiring the said Commercial Credit Company and the said garnishees in this case to turn over to the clerk of court the aforesaid sum of $11,686.51, and that the same be held by him subject to the further orders of this court," and further, if it should appear that the funds have been turned over to the Commercial Credit Company and are without the jurisdiction of the court, or should the said Commercial Credit Company fail to comply with the orders and decrees of this court with reference to refunding said funds, that your petitioners do have and recover joint and several

judgments "against the said Commercial Credit Company and the said garnishees in this case, for the full amount of the claims of your intervenors herein." It appears that Samuel H. Myers and C. Henry & R. S. Cohen were the attorneys of record for the Commercial Company, and in the petition last referred to were alleged to be persons against whom substantial relief was alleged and prayed; but it does not appear that the petition was served upon them, or that they acknowledged service or waived service, or that they had been otherwise made parties and served in the proceeding in this case. In these circumstances the judgment of the trial court was not in any sense binding upon them. This being so, they were not necessary parties defendants in error; and the motion to dismiss the bill of exceptions will be denied.

2. The record specified in the bill of exceptions and sent to this court contains a great deal of superfluous matter that tends to confusion. The controlling allegations are to be found in the petition filed by Sam Denny on May 15th, 1922, and the subsequent amendments thereto. That petition was directed against the Commercial Credit Company. Sam Denny had participated in everything that had been done before, including the consolidation of the cases, the reference of the consolidated case to an auditor, the trial before the auditor; and finally the right which Denny now seeks to enforce, as well as the rights of J. R. Powers, G. E. Youmans, and the Automotive Supply Company, relate to claims for specific amounts as allowed by the auditor. In the proceedings prior to the hearing before the auditor Denny was on the same side of the litigation with the Commercial Credit Company. The subject of contention now is checks issued by the receiver for the respective amounts found by the auditor for Sam Denny and the above-mentioned intervenors; and the question as to the interest of Sam Denny and the other named intervenors. Relatively to Sam Denny paragraphs two, three, eight, nine, and ten of the petition first above mentioned relate to this question. It is there alleged, in substance, that the auditor allowed Denny $2135 on his claim for loss under his policy of insurance; that the policy was in possession of the Commercial Credit Company; that the Commercial Credit Company and Denny were beneficiaries under the policy as their interests might appear; that the check was made payable to the attorneys of the parties;

that the Commercial Credit Company has no just interest in the checks, but is claiming practically all the fund, and refuses to indorse the check to the rightful owner; that the pretended· claim of the Commercial Credit Company rests on a separate contract between that company and Denny, dated October 24, 1919, now in possession of the company; that the claim under that contract was not submitted to the auditor or included in the record of the case; that the reason the Commercial Credit Company has no just interest in the check or claim against Denny is "that the property . . out of which the said purported claim arises, was destroyed by fire; and the title to the said property being in the said Commercial Credit Company, the said loss, under the law, falls upon the said Commercial Credit Company." The prayers included one that the court would inquire into all matters alleged; and establish the respective rights of all parties. Elaborative allegations were included in the subsequent amendment filed on January 17, 1923, in which there were prayers of similar import. The nature of the claim alleged to be founded on the contract of October 24, 1919, is not sufficiently alleged to enable the court to say that it is or is not a valid claim; but after all, there are the general allegations that the claim is based on that contract; that the contract is in possession of the Commercial Credit Company, and that it is an invalid claim and being used as a pretense for holding the check; that the check is one in which Sam Denny has an unascertained interest for which he seeks a decree. There was sufficient in this petition to support appropriate amendment, and it was erroneous to dismiss the petition, as stated in the judgment excepted to, on the ground that "the same failed to set forth a cause of action." It is unnecessary to discuss other questions referred to in the transcript of record that was specified in the bill of exceptions and transmitted to this court, or in what respect it would be proper to amend the petition by adding other allegations, as the trial judge only sustained the general demurrer, and no special grounds of demurrer are for decision. *Judgment reversed. All the Justices concur.*